1  ALBERT FEASTER, CDCR #F-24510
   High Desert State Prison
2  P.O. Box 3030                    **FILED**
   Susanville, CA 96127
3
                                    'JUL - 3 2008
4  Plaintiff In Pro Se
                                    RICHARD W. WIEKING
5                                   CLERK, U.S. DISTRICT COURT
            UNITED STATES DISTRICT COURT
                                    NORTHERN DISTRICT OF CALIFORNIA
6           NORTHERN DISTRICT OF CALIFORNIA

7  ALBERT FEASTER,                  CV No. **08**        **3223**

8            Plaintiff,         )   COMPLAINT FOR DAMAGES, DECLARATORY
                                )   JUDGMENT AND INJUNCTIVE RELIEF
9       v.                      )
                                )   (42 U.S.C. §§ 1983 and 1985)
10 KEVIN PAUGH, individually    )
   and in his official capa-    )   DEMAND FOR JURY TRIAL
11 city as a Police Officer,    )
   Badge # 12, Menlo Park Police)
12 Deaprtment; M. PRICE, indiv- )       E-filing
   idually and in his official  )
13 capacity as a Sergeant/Police)
   Officer, Badge # 80, Daly City)
14 Police Department; D. METZGER,)
   individually and in his official)
15 capacity as a Police Officer, )
   Badge # 3, Atherton Police Depart-)
16 ment; A. ROHLEDER, individually)
   and in his official capacity as)
17 a Police Officer, Badge # 120,)
   Daly City Police Department;  )
18 J. CHILLTON, individually and )
   in his official capacity as a )
19 Deputy Sheriff, Badge # 614, San)
   Mateo County Sheriff's Department;)
20 CITY OF ATHERTON; CITY OF DALY)
   CITY; CITY OF MENLO PARK; COUNTY)
21 OF SAN MATEO; and JOHN AND JANE)
   DOES 1 through 50, et al.,    )
22                               )
                                )
23          Defendants.          )
                                )
24 _____)

25 ///

26 ///

27 ///

28                              -1-

## I. INTRODUCTION

1. This is a Civil Action seeking Damages, Declaratory Judgemet, and Injunctive Relief agaisnt the Defendants for committing acts under color of state law. And depriving plaintiff of rights, secured by the Constitution and laws of the United States. On June 9, 2006, defendants savagely assaulted, beat, and inflicted great bodily injury on Plaintiff during a traffic stop in the City of East Palo Alto, California, because plaintiff's vehicle did not have a front license plate, a violation of California Vehicle Code § 5200. And in so apprehending Plaintiff, the defendants used unlawful and excessive force against plaintiff, including allowing him to be savagely attacked and biten by a"K-9" Police Dog, without adequately and properly controling said animal, in violation of Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. And in violation of California State law.  And the defendants committed acts of crimes and conspiracy in filing false police reports, and fabricating evidence to justify their savage and unlawful use of excess force in effectuating a detention and/or an arrest of Plaintiff.

## II. JURISDICTION

2. The Court has jurisdiction of this action pursuant to 42 U.S.C. §§ 1983, 1985 &  1986; 28 U.S.C. §§ 1331 and 1343.  The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(d) over Plaintiff's state law claims.

## III. VENUE

3. The Claims alledged herein arose in the County of San Mateo, California. Therefore, jurisdiction and venue lies in the United States District Court for the Northern District of California.(28 U.S.C. § 1391(b)(2))

-2-

## IV. PARTIES

4. Plaintiff **ALBERT FEASTER**, is a Prisoner of the State of California, confined at High Desert State Prison in Susanville, California. Plaintiff is also a Citizen of the United States and was a "former" resident of this judicial district.

5. Defendant **K. PAUGH,** was at all times mentioned herein, a Police Officer for the City of Menlo Park, California. As such, he was responsible for enforcing the laws of the United States and State of California. And for protecting the public at large, including plaintiff.

6. Defendant **D. METZGER,** was at all times mentioned herein, a Police Officer for the City of Atherton, California. As such, he was responsible for enforcing the laws of the United States and State of California. And for protecting the public at large, including plaintiff.

7. Defendant **A. ROHLEDER,** was at all times mentioned herein, a Police Officer for the City of Daly City, California. As such, he was responsible for enforcing the laws of the United States and State of California. And for protecting the public at large, including plaintiff.

8. Defendant **J. CHILLTON,** was at all times mentioned herein, a Deputy Sheriff for the County of San Mateo, California. As such, he was responsible for enforcing the laws of the United States and State of California. And for protecting the public at large, including plaintiff.

9. Defendant **CITY OF ATHERTON** is a local Municipality with the capacity to sue, and to be sued. Said Municipality is sued because its agent **D. METZGER,** was acting under color of state law, and under the policies, procedures, and official regulations of the **ATHERTON POLICE DEPARTMENT** and **CITY OF ATHERTON,** which constitued violations of Plaintiff's federal civil rights.

///

-3-

10. Defendant CITY OF DALY CITY is a local Municipality with the capacity to sue, and to be sued. Said Municipality is sued because its agents M. PRICE and A. ROHLEDER were acting under color of state law, and under the official regulations of the DALY CITY POLICE DEPARTMENT and the CITY OF DALY CITY, which constituted violations of Plaintiff's federal civil rights.

11. Defendant M. PRICE, was at all times mentioned herein, a Sergeant Police Officer for the City of Daly City, California. As such, he was responsible for enforcing the laws of the United States and State of California. And for protecting the public at large, including plaintiff.

12. Defendant CITY OF MENLO PARK is a local Municipality with the capacity to sue, and to be sued. Said Municipality is sued because ita agent K. PAUGH, was acting under color of state law, and under the official policiies, procedures, and regulations of the MENLO PARK POLICE DEPARTMENT and CITY OF MENLO PARK, which constituted violations of plaintiff's federal civil rights.

13. Defendant COUNTY OF SAN MATEO is also a local Municipality with the capacity to sue, and to be sued. Said Municipality is sued because it agent J. CHILLTON, were acting under color of state law, and under the official policies, procedures, and regulations of the SAN MATEO COUNTY SHERIFF'S DEPART- MENT and COUNTY OF SAN MATEO, which constituted violations of Plaintiff's federal civil rights.

14. Defendants JOHN and JANE DOES 1 through 50, are each also responsible in some manner for the injuries, crimes, anc civil rights deprivations alleged herein. The true names and capacities of Doe Defendants 1 through 50, are presently unknown to plaintiff. Plaintiff is informed and believes, and therefore alleges on information and belief, that each of them is responsible in some manner for the injuries, crimes, and civil rights

-4-

1   deprivations alleged herein. Plaintiff, therefore sues defendants' Doe 1 through

2   50, by such fictitious names and will seek leave to amend this Complaint to "add"

3   their "true" names and capacities when the same have been ascertained.

4       15. Plaintiff sues each and all defendants in their individual

5   capacities, including all of the Named Municipalities.

6                           V. FACTS

7       16. At all times mentioned herein, each individual defendant was

8   acting in the capacity and scope of his employment.

9       17. At all time mentioned herein, each individual defendant  was

10  acting under color of state law.

11      18. On June 9, 2006, at approximately 8:30 P.M., plaintiff was driving

12  a Green 1995 Pontiac Grand Am that belonged to his girlfriend, Miss. Talila

13  Davis. Plaintiff had just left his residence located at 2465 Gonzaga Street

14  in the City of east Palo Alto, California, where he shared a residence with

15  Miss. Davis, to take his friend, Mr. Luis Mariscal home to Mariscal's house

16  on Clarke Street in the City of East Palo Alto, California.

17      19. Plaintiff proceeded driving from Gonzaga Street to University

18  Avenue when he noticed that he was being followed by a Marked Police "K-9"
                                            1./
19  Vehicle from the Menlo Park Police Department.

20      20. A Police Officer in East Palo Alto, California, had recently been

21                              -5-

22  1. Plaintiff and his Passenger ("Mariscal") thought it was unusual to be
      followed by a "K-9" Patrol Car from the Menlo Park Police Department.
23    Plaintiff was driving in the "City-Limits" of East Palo Alto, Calif-
      ornia, which has its own Police Department. Plaintiff had not committed
24    any crimes. And had in his possession a valid California Driver's
      License. The Vehicle he was driving was insured. And plaintiff had
25    Proof of Insurance. Therefore plaintiff and Mariscal were puzzled "why"
      they were being followed by a "K-9" Patrol Car from Menlo Park?
26

27

28

1  killed. Therefore, plaintiff and Mariscal heard accounts from friends and

2  family members, that the Police were actively harassing Black and Hispanic

3  males in an attempt to locate and apprehend the Perpetrator of the Homocide

4  of the Police Officer. Thus, Plaintiff and Mariscal were afraid and extremely

5  fearful of the Police. Additionally, plaintiff had been brutalized by the Police

6  on a prior occassion. During this incident, Plaintiff was assaulted by Special

7  Agent, K. FAKAVA, of the San Mateo County Sheriff's Department, who slapped

8  plaintiff. And placed a loaded firearm in Plaintiff's mouth, punched plaintiff

9  repeatedly in his sides, placed plaintiff in a "full nelson," and choked plaintiff

10 and arrested pleaintiff on "Bogus" and "false" charges. Therefore, plaintiff was

11 and is extremely fearful of the Police.

12      21. Plaintiff proceeded driving westbound on University Avenue to Notre

13 Dame Street, when he noticed that the Police had activated its Red and Blue

14 Emergency lights.

15      22. Plaintiff not knowing whether the Police were attempting to stop

16 him, or if they were trying to go around plaintiff to respond to an emergency

17 call? Plaintiff pulled into the left turn lane and turned south at the inter-

18 section of University and Notre Dame, plaintiff continued driving southbound

19 on Notre Dame and slowed his vehicle down to allow the Patrol Car to pass him.

20      23. Seeing that Patrol Car was still behind him, plaintiff panic and

21 continued to drive Southbound on Notre Dame, where plaintiff failed to come

22 to a complete stop at the Stop Sign at the Intersection of Notre Dame and

23 Fordham Street. There at Notre Dame and Fordham Street the Police activated

24 their Siren which frightened plaintiff.

25      24. Plaintiff then turn the vehicle eastbound on Fordham in an attempt

26 to drive to a location of safety and witnesses, so as to yeild and surrender

27 to the Police. Plaintiff did this, because he was fearful of being assaulted

28                                    -6-

and beaten by the Police for failing to stop his vehicle earlier on University
Avenue and Notre Dame Streets. And plaintiff wanted other people to observe
the Police apprehend and detain him.

25. At the intersection of Fordham and Rutger's Avenue, plaintiff
observed a large crowd of people hanging out on the street. Therefore,
plaintiff stopped his vehicle and exited the Car from the Driver's door
with his hands up in the air facing the Police Officers still seated in
their Patrol Car.

26. The Driver of the Police Car, later identified as defendant
PAUGH, immediately jumped out of the Police Car and ran to its back door
and retrieved a large, barking "K-9" Dog.

27. Upon seeing the Dog, and observing it was extremely vicious. The
Dog was jumping up and down, snarling, and showing its teeth. It was pulling
PAUGH who was barely able to control the ANIMAL on its leash. Therefore,
plaintiff began backing up when PAUGH released the Dog with a command to
"get him!"

28. At that point, plaintiff turned around and ran to the front gate
of 2874 Fordham Street in an attempt to escape the Dog. Plaintiff opened the
gate, entered the front yard, and attempted to close the gate to prevent from
being attacked by the Dog. However, plaintiff was unsucessful and the K-9
charged through the gate and began viciously attacking Plaintiff by biting
plaintiff on plaintiff's right leg as plaintiff struggled with the dog and
continued to run through the yard.

29. Plaintiff in severe and excruciating pain feared for his life,
struggled through the yard as the K-9 continued to attack him. There plaintiff
limped to the side fence and climbed the fence while the K-9 was still biting
plaintiff and attached to plaintiff's right leg.

-7-

30.  Plaintiff somehow manged to pull himself to the top of the fence while the K-9 was savagely biting plaintiff and still attached to plaintiff's right leg. Plaintiff's body was hanging over the fence which was estimated to be Six (6) feet high. There defendant PAUGH arrived and began calling plaintiff a "Nigger." And commanded that plaintiff "get down off the fence."

31. PAUGH began to beat plaintiff with a Metal Flashlight and his fists on his legs, buttocks, and lower back. And was repeatedly yelling at Plaintiff, calling plaintiff a "Nigger," threatening to "shoot" and "Kill" plaintiff if he did not come down off the fence.

32. PAUGH commanded the dog to "kill" plaintiff, while the dog was still biting plaintiff's right leg. And PAUGH continued striking plaintiff with his fists and a Police Flashlight in an attempt to make plaintiff fall from the fence.

33. PAUGH grabbed a hold around plaintiff's legs in an attempt to pull plaintiff back over the fence. At the same time, he continued commanding the K-9 to "kill" plaintiff, as the dog continued biting plaintiff and secured a death lock on plaintiff's right calf.

34. PAUGH then began pulling and tearing plaintiff's pants and under-wear off him. Then PAUGH kicked a hole in the wooden fence and knocked out two planks, and grabbed plaintiff's now exposed genitals and repreatedly hit them with his fists, and Squeezed plaintiff's testicals.

35. At that point, the dog released its lock and plaintiff fell from the fence head first to the ground on the other side of the fence. PAUGH then pulled his weapon out and came through the hole he had made in the fence with the dog, and commanded the dog to re-engage attacking plaintiff. As the dog was biting plaintiff on both legs, PAUGH proceeded to Pistol Whip plaintiff and hit

-8-

1  plaintiff with his gun on the back of plaintiff's head.

2  36. At that point, defendants PRICE, METZGER, and ROHLEDER arrived

3  on the scene. And began attacking plaintiff by beating him with their fists,

4  hands, and feet as the K-9 continued to bite and savagely attack plaintiff.

5  These defendants kicked plaintiff in the head and throughout his body as he

6  lay head first in a prone position on the ground.

7  37. Plaintiff now in shock due to the assault and being savagely biten

8  by the K-9, lay helpless, prone on the ground as defendant METZGER used his

9  Police Department issued Tazer on plaintiff on two (2) full 5 (five) second

10  bursts, which caused plaintiff to suffer severe and excruciating pain.

11  38. The assault stopped and PAUGH retrieved and stopped the K-9

12  from attacking plaintiff, because the Owners of the Home and yard that plaintiff

13  and the Police were in were "looking," along with a crowd of people who came

14  into the yard to see what the Police were doing.

15  39. Plaintiff was handcuffed and thereafter transported by Paramedics

16  to Stanford Hospital to the Emergency Room for treatment of injuries plaintiff

17  sustained during the assault and dog attack by defendant Police Officers.

18  40. Plaintiff was admitted to the Hospital due to the severity of

19  his injuries and dog bites.

20  41. The acts and omissions of defendants PAUGH, PRICE, METZGER and

21  ROHLEDER and each of them was excessive, malicious, oppressive, unlawful and

22  each of them acted with reckless and callous deliberate indiference to plain-

23  tiff's rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to

24  the United States Constitutuion. And in violation of California state law.

25  42. As a proximate result of defendants' acts and omissions, plaintiff

26  suffered physicial injury and permenant physical injuries, and a loss of his

27  rights guaranteed by the United States Constitution.

28                                        -9-

1      43. As a proximate result of defendants' acts and omissions,

2  plaintiff suffered emotional disstress and a loss of his rights secured

3  by the Constitution of the United States.

4      44. Plaintiff realleges and incorporates by reference each

5  allegation of paragraphs 1 through 40.

6      45. While plaintiff was in the ambulance and being transported to

7  Stanford Hospital, and at Stanford Hospital, plaintiff overheard defendants'

8  PAUGH, PRICE, METZGER, ROHLEDER and CHILLTON discussing what they were going

9  to "Write" in their "Reports" for "Fucking this guy up." (Referring to Plain-

10 tiff)   Plaintiff overheard defendant PAUGH tell defendants PRICE and METZGER,

11 that he ("PAUGH")  "fucked-up," and "lost control" of himself throughout the

12 situation. PAUGH, admitted as so did PRICE and METZGER to using "excessive force"

13 against plaintiff. And allowing the dog to "tear his ass apart" during Plaintiff's

14 apprehension and arrest. The defendants attempted to talk to plaintiff after their

15 assault of plaintiff. However, upon hearing the discussion of the defendants and

16 learning that they were conspiring to falsify the facts of what actually happend

17 in their Police Reports, plaintiff was afraid and refused to speak with these

18 defendants, or any of the hospital personnel.

19     46. Plaintiff heard PAUGH tell PRICE, METZGER, ROHLEDER, and CHILLTON,

20 that he was going to lie and state in his Report, that plaintiff had a gun. And

21 that plaintiff pointed and aimed it at him; And that plaintiff took his depart-

22 ment issued flashlight and hit him in the head with it. PAUGH also requested "help"

23 from the other defendants (PRICE, METZGER, ROHLEDER, and CHILLTON) in collabo-

24 rating his story.

25     47. Plaintiff heard defendant PRICE tell PAUGH, "not to worry about it."

26 And directed defendant CHILLTON to go back to the scene and plant a "throw down"

27 there. And to "retrive, log, and book it into evidence." PRICE added, "I'll help

28                                      -10-

1    you. Dont trip!"

2          48. Plaintiff overheard all of the defendants agree to falsify

3    their reports. And to "cover-up" for each other. The defendants repeatedly

4    tried to talk with plaintiff. And even apologized for their actions several

5    times. However, upon hearing their conversation plaintiff was afraid of talk-

6    ing with these defendants because he was afraid and believed that they would

7    conspire with hospital personnel to "kill" plaintiff. Therefore, plaintiff

8    remained silent and was in absolute shock due to the pain caused by his injuries,

9    and scared beyond measure over the conversation he heard defendants discussing.

10          49. The acts and omissions of defendants PAUGH, PRICE, METZGER,

11   ROHLEDER, and CHILLTON was unlawful and each of them acted with reckless and

12   callous indiference to plaintiff's rights under the Fourth, Fifth, Eighth,

13   and Fourteenth Amendments to the United States Constitution. And in violation

14   of 42 U.S.C. §§ 1985 and 1986. And in violation of California state law.

15          50. As a proximate result of defendants' acts and omissions,

16   plaintiff suffered physical injury and permenant physical injures, and a loss

17   of his rights guaranteed by the United States Constitution.

18          51. As a proximate result of defendants' acts and omissions,

19   plaintiff suffered emotional disstress and a loss of his rights secured

20   by the Constitution of the United States.

21          52. Plaintiff realleges and incorporates by reference each

22   and every allegation of paragraphs 1 through 49.

23          53. Defendants CITY OF ATHERTON, CITY OF DALY CITY, CITY OF

24   MENLO PARK, COUNTY OF SAN MATEO, and JOHN AND JANE DOES 1 through 50, et al.,

25   through their official and written policies, regulations, and procedures

26   were deliberately indiferent to the rights of Plaintiff by allowing defendants

27   PAUGH, PRICE, METZGER, ROHLEDER, AND CHILLTON to leave outside their respective

28                                    -11-

1  "City-Limits" and area of jurisdiction and enter the **"City-Limits"** of East Palo

2  **Alto, California,** under their written "Mutual Assistance" Agreements to violate

3  the federal civil rights of plaintiff.

4          54. The acts and omissions of defendants CITY OF ATHERSON, CITY OF

5  DALY CITY, CITY OF MENLO PARK, COUNTY OF SAN MATEO, AND JOHN  AND JANE DOES 1

6  **through 50, et al.,** was unlawful and each of them acted reckless  &   with

7  callous and deliberate indifference to plaintiff's rights under the Fourth,

8  Fifth, Eighth, and Fourteenth Amendments to the United States Consitution.

9  And in violation of California State law.

10         55. As a proximate result of defendants' acts and omissions,

11  plaintiff suffered physical injury and permenant physical injuries, and

12  a loss of his rights guaranteed by the United States Constitution.

13         56. As a proimate result of defendants' acts and omissons,

14  plaintiff suffered emotional disstress and a loss of his rights secured

15  by the Constitution of the United States.

16         57. On or about, August 1, 2006, plaintiff filed timely claims

17  against all of the defendants with all of the Municipalities alleged in

18  this Complaint above as mandated by the California Tort Claims Act. And

19  each of the Municipalities rejected plaintiff's claims.

20                          FIRST CLAIM FOR RELEIF
                    (Illeaal Use of Excessive and Unreasonable Force)
21                                    Per
                   Defendants PAUGH, PRICE, METZGER, ROHLEDER and CHILLTON
22

23         58. Plaintiff realleges and incorporates by reference each allegation

    of paragraphs 1 through 57.
24

25         59. The individual defendants used excessive and unreasonable force

26  against plaintiff resulting in plaintiff sustaining serious and permenant

27  injuries in violation of Plaintiff's rights under the Fourth, Fifth, and

                                    -12-
28

Fourteenth Amendments to the United States Constitution.

## SECOND CLAIM FOR RELIEF
(Excessive Force In Violation of the Due Process Clause)
Per
Defendants PAUGH, PRICE, METZGER, ROHLEDER and CHILLTON

60. Plaintiff realleges and incorporates by reference each allegation of paragraphs 1 through 57.

61. The individual defendants used excessive and unreasonable force and inflicted unnecessary and wanton pain and suffering, maliciously and sadistically for the very purpose of causing serious harm in violation of plaintiff's rights under the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

## THIRD CLAIM FOR RELIEF
(Conspiracy)
Per
Defendants PAUGH, PRICE, METZGER, ROHLEDER and CHILLTON

62. Plaintiff realleges and incorporates by reference each and every allegation in paragraphs 1 through 57.

63. By knowingly committing acts to conspire, impeding, hindering, defeating and neglecting to prevent the deprivation of plaintiff's physical injuries and Consitutional rights the defendants' committed acts of Criminal and Civil Conspiracy in violation of 18 U.S.C. § 241 and 42 U.S.C. § 1985.

## FOURTH CLAIM FOR RELIEF
(Failure to Train and Properly Supervise)
Per                    2./
Defendant Municipalities Cities and County

64. Plaintiff realleges and incorporates by reference each and every allegation in paragraphs 1 through 57.

-13-

2. Plaintiff Sues and Brings this Claim against the City of Atherton, the City of Daly City, the City of Menlo Park, and the County of San Mateo, California, which are considered "Persons" within the terms of 42 U.S.C. § 1983. (See, Monell v. Department of Social Services, 436 U.S. 658, 690, 694, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1078))

65. By knowingly failing to properly train and supervise subordinate law enforcement personnel and permitting them through their official and written policies, regulations, and procedures to leave their respective jurisdictions to render "Mutual Assistance" outside the "City-Limits" of the City of Atherton, the City of Daly City, the City of Menlo Park, and the unincorporated areas of San Mateo County, and allow their agents, namely: Defendants PAUGH, PRICE, METZGER, ROHLEDER, and CHILLTON to act unlawful, reckless, malicious and callously deliberately indiferent to the federal civil rights of plaintiff, the defendant Municipalities each and all of them violated plaintiff's rights under the Fourth, Fifth, Eighth, and Four-teenth Amendments to the United States Constitution.

## FIFTH CLAIM FOR RELIEF - STATE LAW CLAIM - NEGLIGENCE

Per

## ALL DEFENDANTS

66. Plaintiff realleges and incorporates by reference each and every allegation of paragraphs 1 through 57.

67. Each and all of the Named defendants owed plaintiff a duty to protect him from harm and failed to carry out that duty in violation of Calif-ornia Civil Code, Section 43 et seq.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for the following relief:

1. For Compensatory, General, and Special Damages against Defendants in an amount according to proof;

2. For Punitive Damages against the Defendants in an amount determined to be just and will deter the individual defendants and others from future similar conduct;

3. For Declatory Judgment;

-14-

4. A Trial by Jury;

6. Reasonable Attorney, Paralegal, and Investigatory Fees, and Court Costs and Fees.

7. Injunctive relief to include referring this Case to the United States Attorney for Possible Criminal Prosecution of the Defendants for violating 18 U.S.C. § 241.

8. Any additional relief the Court deems just and proper in the interests of justice.

DATED: **JUNE 20, 2008**

Respectfully submitted,

_Albert Feaster_
ALBERT FEASTER
Plaintiff In Pro Se

AF
061908

///

///

///

///

///

///

///

///

///

///

///

///

///

///

-15-

VERIFICATION

(C.C.P. §§ 446, 2015.5; 28 U.S.C. § 1746)

1   I, **ALBERT FEASTER**_____ declare under the penalty of perjury that:

2   I am the PLAINTIFF/PETITIONER in the attached; I have read the foregoing

3   document(s) and know the content(s) thereof; that the same is true of my own

4   personal knowledge, or upon information and belief which I believe to be true;

5   that if called to testify as to the contents thereof, I could do so competently

6   as a sworn witness. Executed on this **20th** day of **JUNE**____, 200**8** at

    **High Desert State Prison, P.O. Box 3030, Susanville**_____, California.

7

8                                              _____
                                               DECLARANT / IN PRO SE

9                        PROOF OF SERVICE BY MAIL

10          (C.C.P. §§ 1013(a), 2015.5; 28 U.S.C. § 1746)

11

12  I, **ALBERT FEASTER**_____ hereby declare: That I am a resident of

13  _____**SUSANVILLE**_____, California; am over the age of eighteen (18)

14  years; I ___**AM**___ a party to the above entitled action; My Mailing address is

    **High Desert State Prison, P.O. Box 3030, Susanville**_____, California.

15

16  I served the attached document(s) entitled: **COMPLAINT FOR DAMAGES,**_____

17  **DECLARATORY JUDGMENT AND INJUNCTIVE RELEIF (42 U.S.C. § 1983, 1985)**_____

18  on the persons/parties specified below by placing a true and correct copy of said

19  documents into a sealed envelope(s) with the appropriate postage affixed thereto

20  and placing said envelopes into the United States Mail at: **High Desert State**_____

21  **Prison, Susanville**_____ California addressed as follows:

22                        **Clerk,**
                          **U.S. District Court**
23                        **Northern District of California**
                          **450 - Golden Gate Avenue**
24                        **San Francisco, CA 94102**
    I declare under the penalty of perjury under the laws of the State of

25  California the foregoing is true & correct and that this declaration was executed

26  on **20th** day of **JUNE**____, 200**8** at **SUSANVILLE**_____, California.

27  Declarant/Pro/Se                    Signature _____

28
                              -16-

ALBERT FEASTER
CDCR #F-24510
High Desert State Prison
P.O. box 3030, A-1-133-U
Susanville, CA 96127

June 20, 2008

Clerk,
U.S. District Court
Northern District of California
450 - Golden Gave Avenue
San Francisco, CA 94102

        Re: Feaster v. Paugh, et al.

Dear Sir or Madam:

Enclosed for immediate filing, please find the Original of a 42
U.S.C § 1983 Complaint. And the Original of a Motion to Proceed
In Forma Pauperis. (See Enclosures)

Please file these pleadings immediately.

Sincerely,

*Albert Feaster*

ALBERT FEASTER
Plaintiff In Pro Se


Enclosures

ALBERT FEASTER, CDCR # F-24510
H DESERT STATE PRISON
BOX 3030, A-1-133 U
SANVILLE, CA 96127

CLERK,
U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
450 - GOLDEN GATE AVENUE
SAN FRANCISCO, CA 94102

CONFIDENTIAL

LEGAL MAIL

LEGAL MAIL

LEGAL MAIL

8-20-08



